IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SUSAN BALD,<br><br>        Plaintiff,<br><br>   vs.<br><br>KUAKINI MEDICAL CENTER,<br><br>        Defendant. | CIVIL NO. 15-00525 RLP<br><br>MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTION DISTRESS WITH LEAVE TO AMEND AND GRANTING DEFENDANT KUAKINI MEDICAL CENTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY |

MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTION DISTRESS WITH LEAVE TO AMEND AND GRANTING DEFENDANT KUAKINI MEDICAL CENTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR <u>WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY</u>

Plaintiff Susan Bald filed this action against Defendant in Hawaii state court alleging that she was fired from her job as a Healthcare Technician in violation of public policy. <u>See</u> ECF No. 1-2. Plaintiff asserts two state law claims in her Complaint: wrongful termination in violation of public policy and intentional infliction of emotional distress ("IIED"). Defendant removed this action to this Court on the basis of preemption under Section 301 of the Labor Management Relations Act. <u>See</u> ECF No. 1. On March 17, 2017, Defendant Kuakini Medical Center's Motion for Partial Summary Judgment as to Plaintiff's Claim for Wrongful Termination in Violation of Public Policy, came on for hearing. During the hearing on the Motion for Partial Summary Judgment, the Court directed the parties to

submit supplemental briefing on the issue of jurisdiction.  See ECF Nos. 37, 38.  After carefully considering the parties' submissions, the relevant legal authority, and the arguments of counsel at the hearing, the Court FINDS that it has jurisdiction, DISMISSES WITH LEAVE TO AMEND Plaintiff's claim for IIED, and GRANTS Defendant's Motion for Partial Summary Judgment.

BACKGROUND

In her Complaint, Plaintiff asserts a claim for wrongful termination in violation of public policy and a claim for IIED.  ECF No. 1-2.  Defendant removed this case from the Circuit Court of the First Circuit, State of Hawaii, on December 21, 2015.  ECF No. 1.  In the Notice of Removal, Defendant states that this action is properly removed "because some or all of Plaintiff's claims against Defendant clearly arise under federal law."  Id. at 2.  Specifically, Defendant states that "some or all of Plaintiffs claims are preempted by § 301 of the National Labor Relations Act, 29 U.S.C. § 185."  Id.  Defendant states that to the extent Plaintiff's claims are not preempted, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Id. at 3.  In the Motion for Partial Summary Judgment, Defendant argues that it is entitled to summary judgment on Plaintiff's claim for wrongful termination in violation of public policy.  ECF No. 30.

DISCUSSION

## I. The Court Has Subject Matter Jurisdiction.

Before the Court can address Defendant's Motion for Partial Summary Judgment, the Court must address the issue of subject matter jurisdiction. The Court has a "continuing obligation to assess its own subject-matter jurisdiction, even if the issue is neglected by the parties." United States v. Ceja-Prado, 333 F.3d 1046, 1049 (9th Cir. 2003). It is an "obligation to investigate and ensure [its] own jurisdiction." Id.; see also, Dittman v. California, 191 F.3d 1020, 1025 (9th Cir. 1999) (stating that a federal court has an independent obligation to address sua sponte whether it has subject matter jurisdiction). As discussed below, the Court finds that it has subject matter jurisdiction because Plaintiff's claim for IIED is preempted by Section 301 of the Labor Management Relations Act. The Court dismisses Plaintiff's IIED claim with leave to amend.

As noted above, Defendant removed this action based on its argument that "some or all" of Plaintiff's claims were preempted by Section 301. See ECF No. 1. In its Supplemental Brief, Defendant argues that Plaintiff's IIED claim is preempted by Section 301 of the Labor Management Relations Act. See ECF No. 37. Under the doctrine of complete preemption, a complaint that contains a state law claim that is preempted by Section 301 of the Labor Management Relations Act is presumed to allege a

3

claim arising under federal law, and, thus, may be removed to federal court. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 393-94 (1987).

Section 301 creates federal jurisdiction for claims for breach of a collective bargaining agreement.[1] Miller v. AT&T Network Sys., 850 F.2d 543, 545 (9th Cir. 1988). Section 301 preemption applies to cases whose resolution "is substantially dependent upon analysis of the terms of [a collective bargaining agreement]." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). Section 301 preempts applications of state law "only if such application requires the interpretation of a collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988). Such preemption is intended to promote the uniform interpretation of collective bargaining agreements. Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000) (citations omitted). "The linchpin of preemption analysis is whether the terms of a collective bargaining agreement must be interpreted in order to evaluate a plaintiff's state law claim." Hotel Emps. and Restaurant Emps. Local 2 v.

---

[1] Section 301 provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

4

Vista Inn Mgmt. Co., 393 F.Supp. 2d 972, 984 (N.D. Cal. 2005) (citing Cramer v. Consol. Freightways, 255 F.3d 683, 691-92 (9th Cir. 2001)).

Here, Plaintiff does not dispute that she was a member of the United Public Workers Union and that her employment with Defendant was covered by a collective bargaining agreement. Defendant asserts that Plaintiff's IIED claim is completely preempted by Section 301 because it requires an analysis of the collective bargaining agreement. To prevail on a claim for IIED, Plaintiff must show that (1) that the act causing harm was intentional; (2) that the act was unreasonable; and (3) that the actor should have recognized that the act was likely to result in harm. See Marshall v. Univ. of Haw., 821 P.2d 937, 947 (Haw. Ct. App. 1991). To be considered "unreasonable," the act must be "without just cause or excuse and beyond all bounds of decency" and "outrageous." Ross v. Stouffer Hotel Co., 879 P.2d 1037, 1048 (Haw. 1994). To determine if an IIED claim is preempted, the Court must consider whether the collective bargaining agreement covers the allegedly outrageous conduct. See Humble v. Boeing Co., 305 F.3d 1004, 1013 (9th Cir. 2002) ("if the CBA does not 'cover' the allegedly extreme and outrageous conduct, the intentional infliction claim will not preempted"); see also Alaska Airlines Inc. v. Schurke, 846 F.3d 1081, 1090 (9th Cir. 2017) (stating that the first step in Section 301 preemption

analysis is "whether the CBA contains provisions that govern the actions giving rise to a state claim").

The only conduct alleged in the Complaint relates to Defendant's termination of Plaintiff. See ECF No. 1-2. Specifically, Plaintiff alleges that she was terminated "for medical reporting, and recording observations of a patient, and providing clean bed linens for a patient." Id. ¶ 8. Plaintiff alleges that Defendant's "conduct in terminating [] Plaintiff was wrongful, and contravened the letter and purpose of laws, regulations, rules[,] and public policy." Id. ¶ 9. Plaintiff alleges that Defendant "engaged in extreme and outrageous conduct against the Plaintiff by intentionally and/or recklessly and/or negligently permitting Plaintiff to be terminated." Id. ¶ 13.

In its Supplemental Brief, Defendant details the various provisions of the collective bargaining agreement that address termination of employees. See ECF No. 37 at 3-4. These provisions of the collective bargaining agreement set forth the standards and procedures for termination. See id. In assessing Plaintiff's IIED claim the Court would be required to determine whether Defendant's actions in terminating Plaintiff were "without just cause or excuse and beyond all bounds of decency" and "outrageous." See Ross v. Stouffer Hotel Co., 879 P.2d 1037, 1048 (Haw. 1994). The terms of the collective bargaining agreement governing termination would need to be analyzed to

determine if Defendant's actions in terminating Plaintiff were unreasonable. Because an interpretation of the terms in the collective bargaining agreement will be necessary, Plaintiff's IIED claim based on her termination is preempted. See Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. Cal., 827 F.2d 589, 594 (9th Cir. 1987) ("state tort claims for intentional infliction of emotional distress are preempted when they arise out of the employee's discharge or the conduct of the defendants in the investigatory proceedings leading up to the discharge"); see also Price v. Molokai Gen. Hosp., No. CIV.09-00548 DAE-KSC, 2010 WL 715413, at *6 (D. Haw. Mar. 1, 2010) (holding that the plaintiff's claim for IIED based on termination was preempted). Plaintiff's IIED is preempted by Section 301 and is dismissed with leave to amend.

**II. Defendant's Motion for Partial Summary Judgment is GRANTED.**

Although Plaintiff's IIED claim is preempted by Section 301, the Court finds that it is appropriate to exercise supplemental jurisdiction over Plaintiff's claim for wrongful termination in violation of public policy. See 28 U.S.C. § 1367 ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction"); Jackson v.

7

Southern Cal. Gas Co., 881 F.2d 638, 644 (9th Cir. 1989) (holding that Section 301 does not preempt a state law claim for wrongful termination in violation of public policy); Brown v. Brotman Med. Ctr., Inc., 571 Fed. App'x 572, 576 (9th Cir. 2014) ("a district court may exercise supplemental jurisdiction over claims that are brought in conjunction with claims that are preempted by the LMRA" (citing Ellis v. Gelson's Markets, 1 F.3d 1246 (9th Cir. 1993)). As detailed below, the evidence is undisputed that Defendant is entitled to summary judgment on Plaintiff's claim for wrongful termination.

### A. The Undisputed Material Facts.

The following are the undisputed material facts. See ECF No. 31, Defendant's Concise Statement of Facts ("Def.'s Stmnt."), at 2-6; ECF No. 34, Plaintiff's Response to Defendant's Concise Statment ("Pl.'s Stmnt."), at 3-4.

Plaintiff was hired by Defendant on April 25, 2005, as a full-time Healthcare Technician in the Progressive Care Unit ("PCU"). ECF No. 31, Def.'s Stmnt., ¶ 1; ECF No. 34, Pl.'s Stmnt., ¶ 1. As a Healthcare Technician, Plaintiff was responsible for assisting Registered Nurses ("RN"), attending to the elimination needs of patients, recording patients' urine output measurements, and reporting the measurements to the RN on duty. ECF No. 31, Def.'s Stmnt., ¶ 2; ECF No. 34, Pl.'s Stmnt., ¶ 2. Plaintiff's supervisor for the relevant time period was

Edna Gappe, Patient Care Coordinator of the PCU and Acute Hemodialysis. ECF No. 31, Def.'s Stmnt., ¶ 3; ECF No. 34, Pl.'s Stmnt., ¶ 3.

Defendant's internal "House Rules" require employees "to behave with the highest professional standards and code of conduct." ECF No. 31, Def.'s Stmnt., ¶ 4; ECF No. 34, Pl.'s Stmnt., ¶ 4. An employee who violates any of the House Rules "may be subject to discipline up to and including termination with or without prior notice, warnings or suspension." Id. Specific conduct that may lead to disciplinary action includes: 1. Violation of Defendant's policies, procedures, rules or regulations; 2. Insubordination; refusal to obey instructions; failure to perform work as required or assigned; willful slowdown of work processes; 3. Falsification or dishonesty on any form including falsification of any documents, records or reports. Id. Plaintiff was aware of the House Rules and understood that she was required to follow the House Rules and that she could be subject to discipline, including termination, for violating any of the House Rules. ECF No. 31, Def.'s Stmnt., ¶ 5; ECF No. 34, Pl.'s Stmnt., ¶ 5.

The incident at issue in this action involves a patient in the PCU, who is referred to by the parties as "Patient X." ECF No. 31, Def.'s Stmnt., ¶ 7; ECF No. 34, Pl.'s Stmnt., ¶ 7. Patient X was transferred to the PCU on or around July 30, 2014.

9

ECF No. 31, Def.'s Stmnt., ¶ 8; ECF No. 34, Pl.'s Stmnt., ¶ 8. Patient X received hemodialysis and was given a suprapubic catheter. Id. It was not uncommon for Patient X to have no urine output for days, because she was receiving hemodialysis three times a week. Id. Ms. Gappe and RN Nicole Navarro were familiar with Patient X's medical condition and were aware that Patient X had been producing minimal to no urine, having cared for Patient X upon her transfer to the PCU. Id. In the week leading up to August 8, 2014, Patient X's medical records indicated low urine output of no more than 5-10 mL per shift, with an occasional 20 mL from a catheter. Id.

On August 8, 2014, Plaintiff and RN Marlene Roesener were assigned to care for Patient X during the day shift, from approximately 6:30 a.m. to 3:30 p.m. ECF No. 31, Def.'s Stmnt., ¶ 9; ECF No. 34, Pl.'s Stmnt., ¶ 9. Plaintiff was aware that Patient X was on hemodialysis, had low urine output, was wearing a diaper, and had a suprapubic catheter, which emptied into a leg bag. Id. During her shift, Plaintiff was responsible for regularly checking on Patient X and documenting the amount of urine output she observed at each check. Id.

Plaintiff alleges that she checked on Patient X at 8:45 a.m., 10:45 a.m., and 1:30 p.m. ECF No. 31, Def.'s Stmnt., ¶ 10; ECF No. 34, Pl.'s Stmnt., ¶ 10. At each check, Plaintiff claims that she observed that Patient X's diaper was saturated with

urine, changed Patient X's diaper, and recorded a "large amount" of urine on Patient X's Intake & Output ("I&O") Worksheet. Id. Plaintiff also claims that she observed that Patient X's catheter was not working. Id.[2] Plaintiff further claims to have reported to RN Roesener that Patient X had a large amount of urine output and that Patient X's catheter was not working. Id.

At approximately 6:00 p.m., RN Navarro reviewed Patient X's I&O Worksheet completed by Plaintiff and noticed that Plaintiff had documented that Patient X had outputted large amounts of urine three times that day. ECF No. 31, Def.'s Stmnt., ¶ 12; ECF No. 34, Pl.'s Stmnt., ¶ 12. RN Navarro became suspicious of Patient X's I&O Worksheet's accuracy, because she knew that Patient X was a hemodialysis patient with renal failure who typically had little to no urine output. Id. RN Navarro checked Patient X again and found no leakage from the catheter. Id. Because RN Navarro did not believe that the information on the I&O Worksheet could be accurate, she reported the issue to her supervisor, Ms. Gappe. Id. RN Navarro informed Ms. Gappe that the documented urine output for Patient X was incorrect based on Patient X's medical condition and recent urine output

---

[2] Plaintiff notes in her Concise Statement, that she disputes Defendant's characterization of the catheter as "broken" and states that Plaintiff told RN Roesener that the catheter "is not working." See ECF No. 34. Accordingly, the Court uses Plaintiff's "is not working" language here instead of Defendant's "broken" statement.

history.  Id.  RN Navarro confirmed with Ms. Gappe that Patient X's catheter was still intact and that there was no urine leaking from the catheter.  Id.  For the remainder of her shift, RN Navarro observed Patient X and noted that there continued to be little to no urine output.  Id.

The next morning, on August 9, 2014, Ms. Gappe met with RN Roesener regarding Patient X's urine output from the day before.  ECF No. 31, Def.'s Stmnt., ¶ 13; ECF No. 34, Pl.'s Stmnt., ¶ 13.  RN Roesener informed Ms. Gappe that Patient X had not produced large amounts of urine during her shift the day before.  Id.  RN Roesener confirmed that there had been no problem with Patient X's catheter the day before.  Id.  RN Roesener also confirmed that from her own observations of Patient X the day before, Patient X was outputting little to no urine. Id.

Ms. Gappe questioned Plaintiff about Plaintiff's urine output measurements for Patient X on the I&O Worksheet.  ECF No. 31, Def.'s Stmnt., ¶ 14; ECF No. 34, Pl.'s Stmnt., ¶ 14. Plaintiff informed Ms. Gappe that at each of her three check-ins with Patient X the day before, Plaintiff estimated that Patient X had outputted over 200 mL of urine, or, in other words, that Patient X had outputted over 600 mL of urine during Plaintiff's shift.  Id.  Plaintiff claimed that Patient X's diaper had been saturated.  Id.  Plaintiff claimed that she had completed Patient

12

X's I&O Worksheet based on her observations of Patient X at three separate times, but that she did not show Patient X's saturated diapers to RN Roesener.  Id.

Plaintiff was suspended from September 16 through September 22, 2014.  ECF No. 31, Def.'s Stmnt., ¶ 15; ECF No. 34, Pl.'s Stmnt., ¶ 15.  Ms. Gappe investigated Patient X's I&O Worksheet and determined that Patient X's catheter was intact and that there were no changes in Patient X's condition.  Id.  Ms. Gappe concluded that the large amounts of urine output reported by Plaintiff on Patient X's I&O Worksheet were not possible for Patient X.  Id.

On or around September 12, 2014, Defendant's senior leadership team met regarding the allegations against Plaintiff and decided to terminate Plaintiff's employment after taking into account the investigation findings against Plaintiff.  ECF No. 31, Def.'s Stmnt., ¶ 16; ECF No. 34, Pl.'s Stmnt., ¶ 16.  The final conclusion was that on August 8, 2014, Plaintiff had falsified the urine output data for Patient X, in violation of Defendant's House Rules.  Id.  On September 23, 2014, Plaintiff was discharged.  Id.

**B. Based on the Undisputed Material Facts, Defendant is Entitled to Summary Judgment.**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that

13

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] . . . come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (footnote omitted) (citations omitted).

Hawaii law recognizes a public policy exception to the employment-at-will doctrine. Employees who are wrongfully discharged in violation of a "clear mandate of public policy" can bring claims against their employers, which are called "Parnar claims" because the Hawaii Supreme Court first recognized the claim in Parnar v. Americana Hotels, Inc., 652 P.2d 625 (Haw. 1982). To prevail on a Parnar claim Plaintiff must demonstrate that: (1) the termination violated a clear mandate of public policy; (2) Plaintiff engaged in a protected activity such as

14

refusing to commit an unlawful act, performing an important public obligation, or exercising a statutory right; and (3) Plaintiff was terminated because of this protected activity.  Id. at 631; Villiarimo, 281 F.3d at 1067; see also Cambron v. Starwood Vacation Ownership, Inc., 945 F. Supp. 2d 1133, 1139-40 (D. Haw. 2013).  As discussed in detail below, Defendant is entitled to summary judgment on Plaintiff's claim for termination in violation of public policy because, based on the undisputed facts, Plaintiff did not engage in a protected activity.

In Parnar, the Hawaii Supreme Court stated that courts must "inquire into whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme."  Parnar, 652 P.2d at 630-31.  Here, Plaintiff's Complaint states generally that "Hawaii Department of Health rules, regulations, and law" required Plaintiff to "document[] her observations about patients."  ECF No. 1-2 ¶ 6.  Plaintiff alleges that she was terminated "for medical reporting, and recording observations of a patient, and providing clean bed linens for a patient."  Id. ¶ 8.  In her Opposition to the present Motion, Plaintiff specifically relies on Hawaii Administrative Rules Section 11-93-21(c) as the statement of public policy that Defendant purportedly violated by terminating her.  See ECF No. 33 at 2.  This regulation is part of Chapter 93 of the Hawaii Department of Health's regulations that apply to

"Broad Service Hospitals."  The purpose of Chapter 93 "is to establish minimum requirements for the protection of the health, welfare, and safety of patients, hospital personnel, and the general public in hospitals."  Haw. Admin. R. § 11-93-1.  The subsection that Plaintiff relies on addresses medical records and provides:

> The medical records shall clearly and accurately document a patient's identity, the diagnosis of the patient's illness, treatment, orders by medical staff, observations, and conclusion concerning the patient.

Haw. Admin. R. § 11-93-21(c).  Plaintiff argues that she was terminated for accurately recording her observations of Patient X.  See ECF No. 33 at 2-3.  For purposes of this Motion, the Court assumes, without finding, that Hawaii Administrate Rule Section 11-93-21(c) qualifies as a "clear mandate of public policy."  See Parnar, 652 P.2d at 631.

Next, the Court must consider whether Plaintiff has engaged in a protected activity.  As noted above, courts have held that a Parnar claim "exists only when a plaintiff has engaged in one of a selected few protected activities" such as "refusing to commit an unlawful act," "performing an important public obligation," or "exercising a statutory right or privilege."  Villiarimo, 281 F.3d at 1067 (quoting Smith v. Chaney Brooks Realty, Inc., 865 P.2d 170, 173-74 (Haw. Ct. App. 1994)).  Here, the activity at issue is Plaintiff recording her

16

observations of Patient X.  For the reasons discussed below, the Court finds that the act of Plaintiff recording her observations of Patient X is not a "protected activity" sufficient to support a Parnar claim.  See id.

Here, there is no evidence that Plaintiff was "refusing to commit an unlawful act," "performing an important public obligation," or "exercising a statutory right or privilege."  See Villiarimo, 281 F.3d at 1067.  First, there is no evidence that Plaintiff refused to commit an unlawful act.  As noted above, there is no dispute that Plaintiff documented her observations concerning Patient X.  See ECF No. 31, Def.'s Stmnt., ¶ 10; ECF No. 34, Pl.'s Stmnt., ¶ 10.  There is no evidence that Defendant prevented Plaintiff from documenting her observations or attempted to prevent Plaintiff from documenting her observations.  Second, Plaintiff was not performing an important public obligation.  See Smith, 865 P.2d at 174 (explaining that such activities included jury duty and whistle blowing).  The activity that Plaintiff engaged in was part of her regular job responsibilities.  See ECF No. 31, Def.'s Stmnt., ¶ 9; ECF No. 34, Pl.'s Stmnt., ¶ 9.  Plaintiff does not cite, and the Court has been unable to find, any case where a court has allowed a Parnar claim based on an employee performing their regular job duties.  Third, Plaintiff was not exercising a statutory right or privilege.  Although the particular job task that Plaintiff was

17

performing is related to a regulatory requirement, as noted by Defendant in its Reply, many jobs have duties with regulatory underpinnings.  See ECF No. 35 at 5 (citing Hawaii Administrative Rules regarding cleanliness requirements for tattoo parlors). However, these job duties are not statutory rights or privileges. Under Hawaii law, Parnar claims are reserved for a "narrow class of cases" where the plaintiff has "engaged in one of a selected few activities."  Parnar, 652 P.2d at 631; Villiarimo, 281 F.3d at 1067 (affirming the district court's order granting summary judgment on a Parnar claim that was based on an employee's action of authorizing an outside agency to review his employment records).  Based on the undisputed facts, Plaintiff did not engage in a protected activity, but was instead performing the regular requirements of her job.  Because Plaintiff cannot establish this required element, Defendant is entitled to summary judgment on Plaintiff's claim for wrongful termination in violation of public policy.

## CONCLUSION

1.  Plaintiff's claim for intentional infliction of emotional distress is preempted by Section 301 of the Labor Management Relations Act and is DISMISSED.  Plaintiff is granted leave to file an amended complaint no later than May 1, 2017. The deadline to file dispositive motions is extended to June 16, 2017.

18

2. The Court GRANTS Defendant Kuakini Medical Center's Motion for Partial Summary Judgment as to Plaintiff's Claim for Wrongful Termination in Violation of Public Policy.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, APRIL 10, 2017.



Richard L. Puglisi
United States Magistrate Judge

**BALD v. KUAKINI MEDICAL CENTER; CIVIL NO. 15-00525 RLP; MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTION DISTRESS WITH LEAVE TO AMEND AND GRANTING DEFENDANT KUAKINI MEDICAL CENTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**